DANNY LEE WARNER JR.
#799-415
P.O. Box 56
LEBANON OH 45036

**FEB 2 2 2023**

Clerk, U.S. Courts
District of Montana
Helena Division

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA, HELENA DIVISION

DANNY LEE WARNER JR.,
     Plaintiff,

v

Demetric Godfrey, Jim Salmonsen,
Lynn Guyer, Cynthia Wolken,
John Daugherty, Billie Reich,
Kristy Cobban, Connie Winner,
Roxanne Wigert, Sam Short, Scott
McNeil, Robert Harmon, Bonnie
Swanson, Mark Lochrie, Christine
Klanecky, Lynn Foster, Terrie Stefalo,
Cathleen Clark, James Milligan,
Sgt. Coughlin, Sgt. Renfroe, Sgt. Walls,
Patrick McTighe, Lt. Olive, Sgt. Marquez,
Mr. Johnson, Trinity Services,
John/Jane Does 1-15,
     Defendants.

**CAUSE No. CV 22-08-H-BMM-JTJ**

AMENDED COMPLAINT

## I. INTRODUCTION

This is a civil rights and conspiracy action filed by Danny Lee Warner Jr. for damages, declaratory and injunctive relief under 42 U.S.C. §1983 and §1985, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Plaintiff arrived at the Montana State Prison ("MSP") on December 1, 2017 and has been subjected to a continuous campaign of discrimination, harassment, and retaliation since that day. The conditions of confinement at MSP, when taken

1

individually, violate the United States Constitution, though the cumulative effect of the totality of the circumstances go far beyond cruel and unusual punishment.

As Plaintiff attempted to secure the protections guaranteed by the constitution and established law, a number of Defendants entered into a conspiracy to harass, discriminate, and retaliate against Plaintiff that continues to the present. Indeed, Plaintiff was recently transferred to Ohio (at least in part) for filing this very lawsuit and he can prove that this transfer was retaliatory beyond the shadow of any doubt considering he was literally in the midst of a ninety-day (90) retaliation monitoring when he was sent to Ohio and the investigator who had initiated and was monitoring Plaintiff for retaliation specifically told him that he could not be transferred anywhere under any circumstances until the ninety days were up. Instead, Demetric Godfrey, Jim Salmonsen, Billie Reich, and likely others, conspired to illegally transfer Plaintiff to Ohio as retaliation for filing grievances, lawsuits, and other complaints he made against MSP staff, nor is this the first time.

There is more than some evidence that Plaintiff will be returned to the MSP, given the fact that he **must** be returned pursuant to the Interstate Corrections Compact ("ICC") and as evidenced by being subjected to the exact same violations of his Constitutional rights as he was when returned from the FBOP, there can be no doubt he will be subject to them again upon his return. Indeed, at minimum, Plaintiff's discrimination, retaliation, religious, and Due Process claims were the same after being returned from the FBOP, leading to his filing of more grievances and this very lawsuit, which ultimately saw him transferred yet again in an effort by Defendants to avoid judicial review; one interstate transfer is rare, while two is virtually unheard of, thus the capable of repetition yet evading review standard, in conjunction with the public interest in prisoners being afforded their Constitutional

protections, should serve to allow Plaintiff's claims for declaratory and injunctive relief to proceed.

Plaintiff will show the callous and deliberate indifference Defendants demonstrate for life's basic necessities, human decency, dignity, and prisoner's civil rights. This is done under cover and color of the law, nor is there any oversight or accountability at MSP, as evidenced by the complete lack of any Due Process for mail, property, disciplinary, classification, etc. This denial of Due Process, coupled with the absence of any educational or programming opportunities, obscenely high and restrictive measures on mail, books, pictures, and property, refusal to adequately accommodate religious practices, and the discrimination, harassment, and retaliation all combine to create an environment where conditions of confinement are undoubtedly cruel and unusual, particularly in light of his constitutionally-conferred right to rehabilitation. Plaintiff here offers a chronological account of the abuses he has suffered in an effort to demonstrate both retaliation and the continuing wrongs he has faced since his first day at the MSP.

## II. JURISDICTION and VENUE

1. This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation (under color of the law) of the rights secured by the U.S. and Montana Constitutions. The conspiracy claims are authorized by 42 U.S.C.§1985. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1334, and 1343 and supplemental jurisdiction according to 28 U.S.C. §1367. Of particular importance in the instant case are Montana Code Annotated ("MCA") 53-30-700, *et. seq.* and 45-5-204.

2. Plaintiff seeks declaratory relief under 28 U.S.C. §§2201 and 2202, while injunctive relief is authorized by 28 U.S.C. §§2283 and 2284, as well as Rule 65 of the Federal Rules of Civil Procedure ("F.R.Civ.P.").

3. The District Court of Montana, Helena Division is an appropriate venue under 28 U.S.C. §1391, as most of the events giving rise to the claims herein occurred in Deer Lodge, Montana or while Plaintiff was under the jurisdiction of MSP.

## III. PLAINTIFF

4. Plaintiff Danny Lee Warner Jr. was sentenced **to** the MSP to serve a fifty (50) year sentence and has been at or under the jurisdiction of MSP since December 1, 2017; the civil rights violations enumerated herein have persisted continuously since then, most still being perpetrated today.

## IV. DEFENDANTS

5. Defendant Demetric Godfrey ("Godfrey") is the Associate Warden ("AW") of Security at MSP, whose duties and responsibilities include the day to day operation of MSP and he has ultimate authority of anything and everything that occurs at the prison; "DJ" is Godfrey's gang name.

6. Defendant Jim Salmonsen ("Salmonsen") is the current Warden at MSP and was an AW before this, responsible for, *inter alia*, making policy at the MSP.

7. Defendant Cynthia Wolken ("Wolken") is the Deputy Director of the Montana Department of Corrections ("MTDOC"), whose duties include, *inter alia*, investigating and responding to the final appeal of grievances that completes exhaustion of administrative remedies.

8. Defendant Lynn Guyer ("Guyer") is the former Warden at the MSP and was responsible for, *inter alia*, making policy at the MSP.

4

9. Defendant John Daugherty ("Daugherty") is some type of Administrator for the MTDOC who responded to several of Plaintiff's Director Appeals (final stage of exhaustion) and had an opportunity to stop the violations of Plaintiff's rights.

10. Defendant Billie Reich ("Reich") is an AW at the MSP now, but was previously some type of Bureau Chief at the MSP before this and whose duties and responsibilities are unknown at this time.

11. Defendant Kristy Cobban ("Cobban") is an AW at the MSP now, but was previously some type of Bureau Chief at the MSP before this and whose duties and responsibilities are unknown at this time.

12. Defendant Scott McNeil ("McNeil") is an of AW at the MSP whose duties and responsibilities are unknown at this time.

13. Defendant Connie Winner ("Winner") is the Clinical Services Administrator for the MTDOC, the final arbiter for all mental health and medical issues.

14. Defendant Terrie Stefalo ("Stefalo") is the Religious Activities Coordinator at the MSP, whose duties and responsibilities include, *inter alia*, making decisions about religious accommodations at the MSP and CCC.

15. Defendant Roxanne Wigert ("Wigert") is in charge of Security Threat Groups ("STG") at the MSP, whose duties and responsibilities include, *inter alia*, knowing what constitutes gang activities, symbols, etc. and monitoring these.

16. Defendant Sam Short ("Short") is now an IPS officer, though previously worked with Wigert and is directly responsible for arbitrarily designating Plaintiff as STG.

17. Defendant Robert Harmon ("Harmon") is the property lieutenant at the MSP, whose duties and responsibilities include, *inter alia*, supervising all aspects of inmate personal property, processing books, etc.

18. Defendant Lynn Foster ("Foster") is the property officer at the MSP, whose duties and responsibilities include, *inter alia*, processing inmate personal property, books, etc.

19. Defendant Bonnie Swanson ("Swanson") is the grievance coordinator at the MSP, whose duties and responsibilities include, *inter alia*, processing and investigating inmate grievances.

20. Defendant Mark Lochrie ("Lochrie") was previously the grievance coordinator at the MSP prior to Swanson and still works somewhere in the prison.

21. Defendant Christine Klanecky ("Klanecky") is now Program Manager of the mail room, though previously was the Disciplinary Hearing Officer ("DHO") at the MSP.

22. Defendant Cathleen Clark ("Clark") works in the mail room at the MSP, whose duties and responsibilities include, *inter alia*, processing inmate mail, pictures, etc.

23. Defendant James Milligan ("Milligan") works in the mail room at the MSP, whose duties and responsibilities include, *inter alia*, processing inmate mail, pictures, etc.

24. Defendant Coughlin is a sergeant at the MSP.

25. Defendant Renfroe is a sergeant at the MSP.

26. Defendant Walls is a sergeant at the MSP.

27. Defendant Patrick McTighe ("McTighe") is the former Warden at Crossroads Correctional Center ("CCC"), a regional facility where inmates are placed, but remain under MSP jurisdiction and authority.

28. Defendant Olive was a lieutenant at the CCC.

29. Defendant Marquez is/was a sergeant at the CCC.

30. Mr. Johnson ("Johnson") is a lieutenant at CCC, whose duties and responsibilities do **not** include holding disciplinary hearings, yet this is the person who conspired with Godfrey and McTighe to falsely find Plaintiff guilty of assault on June 25, 2018.

31. Defendant Trinity Services, Inc. ("Trinity") is the company contracted to provide food services at the CCC.

32. Defendant(s) John/Jane Does 1-15 are various unknown and currently unidentifiable individuals employed at MSP/CCC that are responsible for the disappearance of Plaintiff's property, his mail, defaming him to an individual in the public, etc.

33. All Defendants enumerated in ¶¶5-32 were acting under color of the law and each is sued in both their individual and official capacities.

## V. FACTS

34. Plaintiff arrived at the MSP on December 1, 2017, immediately being discriminated against for his religion, as several of his religious books were thrown away with no due process, along with approximately 200 pages of other religious materials; his repeated requests for grievances were refused and by the time he was able to obtain a grievance, it could not be processed as the five-day time frame for

filing an informal had passed and all of this would form the foundation of continuing wrongs that still persist.

35. The discrimination Plaintiff suffers at MSP is best highlighted by the way in which Godfrey, Salmonsen, and Stefalo (along with others) absolutely refuse to properly accommodate Odinist/Asatru practices, yet go out of their way to encourage, favor, and establish other religions, particularly christian and Native American, which violates the First and Fourteenth Amendments to the U.S. Constitution and RLUIPA.

36. In February, 2017 Plaintiff began requesting religious accommodations for Odinists and in retaliation Stefalo requested that he and other Odinists be investigated as "White supremacists"; this became the foundation for religious discrimination that Plaintiff has personally suffered since that time and forms the basis of violations that continue to the present, as MSP maintains systematic discrimination against Odinists, while simultaneously favoring other religions.

37. As of November, 2019 there were almost a hundred (100) inmates under MSP jurisdiction that declared their religious preference as Odinist, and these are only the ones with enough courage to brave the discrimination and retaliation (or risk being branded STG) they will face for their religious beliefs; rather than being a less familiar religion with fewer adherents, Odinism is practiced around the world, in every prison system in the U.S. and the substantial burdens placed on Plaintiff affect a considerable amount of inmates considering MSP only "houses nearly 1,600 inmates" according to the prisons website.

38. Conversely, there are only a few practicing jews (likely less than ten total) under MSP jurisdiction, yet they are accommodated with special clothing, juice, foods, and even spices, which violates the Establishment Clause of the First

8

Amendment and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution when compared to the corresponding lack of accommodations for Odinists.

39. Stefalo would again attempt to link Odinism to "White supremacy" during a prison issues board meeting, despite her admission in the same document that a Native American had attended the Odinist ceremony outside on March 21, 2018; this individual was present to ensure that Odinists did not use the fire pit because Native Americans considered it theirs. Att. A-2.

40. There is an outside worship area that is (on paper) a "communal" area, however, the **custom** at MSP is that only Native Americans can use the fire pit, despite the fact that Defendants are well-aware that Odinist/Asatru inmates require the use of a fire pit to practice their religion as well, one that is in the earth and allows them to connect the earth to the heavens through fire and the smoke that drifts from one to the other; the first time Plaintiff requested to use the outside worship area, it was approved by Stefalo, however, after pressure and threats from Native Americans, Stefalo would refuse to allow Plaintiff and other Odinist/Asatru inmates to use the fire pit to conduct their Blót (religious rite/ceremony), substantially burdening his religious practice and constituting a continuing wrong.

41. Plaintiff would clearly explain the need for a fire pit and (more than once) offer alternatives to this unconstitutional custom, such as setting aside a separate space for Odinist/Asatru practitioners with their own fire pit as the FBOP does in EVERY one of their facilities (even offering to cover the costs associated with this and do the work of building it himself), but this too would be denied without cause, reason, or justification by Stefalo and Godfrey, which violates the First and Fourteenth Amendments to the U.S. Constitution and RLUIPA. Att. J-2/10.

42. Stefalo had at first told Plaintiff that Odinists would be able to use the outside "communal" fire pit, then after several Native Americans bullied and threatened her, Stefalo informed Plaintiff that Odinists could not use the one and only existing fire pit because it was for Native American use only; this substantially burdened Plaintiff's religious practice, as Odinists are **required** to consecrate and purify their outside area before performing a Blót and use a fire pit to do so, as well as sending Odinist offerings to the heavens, nor do Fundamental Odinists such as Plaintiff **EVER** perform Blót indoors .

43. The denial of a sacred space outside that contains a fire pit and is dedicated to the Gods is a continuous violation of Plaintiff's right to practice his religion as he has requested this for Odinist use (either one dedicated solely to Odinists or the one that already exists) as recently as December, 2022, but again been denied with false and incorrect justifications; Stefalo would assert that "Odinists are approved to use the outside worship space and have done so, on March 21, 2018, without issue" however, Plaintiff did object to this that day and told Stefalo that refusing him access to the fire pit forced him to engage in conduct contrary to the requirements of his religion.

44. After filing several grievances in an attempt to secure his religious rights, Mr. Warner was fired from his well-paying job in the Montana Correctional Enterprises ("MCE") at Stefalo's behest and transferred to a regional facility in Glendive, MT in retaliation; his boss at MCE (who was a practicing Pagan herself) told Plaintiff personally that Stefalo had instructed her to fire Plaintiff because he had written grievances against her and all of this forms the basis of a continuing violations allegation, particularly as Plaintiff continues to be discriminated against and retaliated on for his religious beliefs, as well as denied the ability to properly practice his religion.

10

45. Despite being cleared by Lorna Kuchinsky (the STG officer at the time) for the alleged "White supremacist talk" at the Religious Activities Center (Odinists use the archaic term "wights" to refer to "spirits" during their ceremonies and Susan Treuax misconstrued it as "Whitey"), Plaintiff was still somehow listed as STG at the regional facility in Glendive, without any due process whatsoever, no hearing or validation process. Att. A-3.

46. Kuchinsky was the person who initially interviewed Plaintiff upon his arrival at the MSP and elected not to validate him as STG because he does not belong to any gang; Plaintiff's arbitrary listing as STG by Glendive would be only the first in a long line of violations to his right to be free from discrimination that continues to the present and was retaliation for insisting that MSP accommodate his religious beliefs and practices.

47. The discrimination and retaliation would continue once Plaintiff was moved to CCC, where Stefalo would continuously monitor his attempts to secure his religious rights and maintain complete control over all accommodations allowed Plaintiff (even at the CCC), instructing the chaplain(s) there to deny all of his requests for wooden runes, natural fruit juice, and particularly to perform Blót outside; interestingly, while Plaintiff and other Odinists could at least conduct their Blót outside at the MSP (though it would be without use of the "communal" fire pit), Stefalo would specifically instruct Chaplain Johnson to refuse all Odinist requests to do so at the CCC.

48. The substantial burdens on Plaintiff's religious practice became so bad that he was forced to file a lawsuit, though because that lawsuit was dismissed without the court reaching the merits of Plaintiff's claims, the same violations continue to occur to the present and Plaintiff has suffered unimaginable spiritual damage from being deprived of essential elements of his actual religious practice.

11

49. MSP has a program that allows inmates to read books and watch movies on a tablet and there are a plethora of books and other content (including their primary religious texts) related to every religion except Odinism; additionally, MSP regularly puts new material on the tablet for all manner of religions, but excludes Odinists, despite Plaintiff offering to acquire religious materials for them, which violates the Establishment and Free Exercise Causes of the First Amendment as well as the RLUIPA and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by Godfrey, Cobban, and Stefalo. Att. J-11/16.

50. Plaintiff's sincerely held religious beliefs call for him to fast during the Winter Nights (a period that begins on the Autumnal Equinox and ends on the first day of the Heathen new year, roughly three weeks) throughout the day and feast with the Gods every night and it is a substantial burden on his religious practice to be denied this or to not be given wholesome, healthy, natural foods each night to break his fast with; Stefalo, Godfrey, and Salmonsen approved this fast and feast in theory, but did not accommodate it in practice, depriving him of ALL food for the first three days in 2019 and sparsely feeding him for the remainder of the Winter Nights, then giving him a single tray (with approximately 500 calories) each night in 2021 because Stefalo, Godfrey, and Salmonsen would not ensure its enforcement. Att. J-17/21.

51. Considering Plaintiff won this exact issue in Federal Court previously, it was well-established that the Winter Nights is a religious practice that could not be substantially burdened. Warner v Patterson, 2012 U.S. Dist. LEXIS 131559*9.

52. Plaintiff has repeatedly requested to observe the major Odinist/Asatru Holy days **on** the day of their solar significance and has continuously cited a Ninth Circuit case on point demonstrating that the law regarding this is well established, but been consistently denied by, *inter alia*, Stefalo and Godfrey; Plaintiff's

12

sincerely held religious beliefs **require** that he perform religious rituals **on** the Winter and Summer Solstices and both Equinoxes, as these have a solar significance to his religion and spiritual nourishment and it is a substantial burden to require Odinist/Asatru inmates to observe these "on the closest day" as observed by the judge in <u>Rivera v Kernan</u>, 2018 U.S. Dist. LEXIS 168309*8-9. Att. J-22/24.

53. Shortly after arriving at the CCC Plaintiff was involved in a fight with another inmate and DHO Rivas found him guilty of 4201-fighting on June 20, 2018 and NOT guilty of assault. Att. A-6/7. DHO Rivas would later tell Plaintiff that he was called into Defendant McTighe's office and ordered to redo the hearing and specifically find Plaintiff guilty of assault; McTighe and Godfrey had entered into a conspiracy to deprive Plaintiff of his constitutional rights and this was the first act in a long series of events that would culminate in Plaintiff being assaulted by officers at USP Terra Haute at Godfrey's behest, thus forms a continuous campaign of discrimination and retaliation that has never stopped.

54. Though Rivas refused to join Godfrey and McTighe's conspiracy (which is why he is not being sued here), he gladly told Plaintiff what was going on behind the scenes and will be an excellent witness for Plaintiff at trial. After Rivas told McTighe he would not conduct another hearing or change his findings, McTighe ordered Johnson to find Plaintiff guilty of assault, though he was not a DHO and there was zero evidence that Plaintiff had assaulted anyone and Plaintiff was subsequently found guilty (arbitrarily) of assault with NO evidence or due process and spent six months in Max custody (false imprisonment) under atypical and significant conditions of confinement, considering he was forced to stay there at CCC rather than being transferred back to the MSP where other similarly situated inmates had their T.V., commissary, etc. Plaintiff was never given an opportunity

to appeal: he filed an appeal with McTighe (Att. A-9/11), but did not receive a response because of his conspiracy with Godfrey.

55. Plaintiff was given six months in administrative segregation, then placed in High Security, though his points still qualified him for Low classification, because of this "assault" and he never received any due process, the exact same way as on January 3, 2019, demonstrating a campaign of discrimination and retaliation that continues to the present; both Godfrey and McTighe would later tell Plaintiff personally that so long as they were in their respective positions, Odinism would never be accommodated, and that if he continued to pursue the issue they would simply lock him up so he could not practice his religion at all, which they certainly succeeded in doing.

56. On January 3, 2019 Plaintiff was involved in a fight with another inmate after the inmate called him a "punk" (known to be a derogatory and inflammatory term in prison) and the inmate admitted that Plaintiff did not assault him in a statement. (Att. A-13); in addition to Plaintiff receiving NO due process (Marquez did not consider the witness statement, the date on the disciplinary report was wrong, etc.), the DHO would blatantly lie in his Disciplinary Decision, claiming he reviewed the camera, though the disciplinary investigation clearly shows that there was "no video of assault to review." Att. A-14/16.

57. On January 29, 2020 Plaintiff was served a disciplinary infraction report on which he clearly marked that he did not understand the charges and wanted to call witnesses, both of which were completely ignored by Marquez at the direction of McTighe. Att. E-1/2.

58. On February 3, 2020 Plaintiff requested a continuance pursuant to policy to collect evidence for his disciplinary hearing and was arbitrarily denied without

cause or justification, though policy is very specific that DHO must give a reason if they deny the continuance; conversely, Marquez lied on his decision form, would not allow Plaintiff to present any evidence or a defense, did not conduct a fair or impartial hearing, and denied him all due process after Plaintiff told him that he was filing a lawsuit against him for excessive force. Marquez joined Godfrey and McTighe's conspiracy to retaliate on Plaintiff by ensuring he was returned to solitary confinement and these three disciplinaries demonstrate a continuous violation of Plaintiff's due process rights and the systematic deprivation of inmates constitutional rights regarding disciplinary at both MSP and CCC.

59. On or about February 5, 2019 Wigert confiscated a religious drawing from Plaintiff's property as she joined the conspiracy to discriminate, harass, and retaliate against him; Wigert is the STG sergeant whose duties and responsibilities include knowing the difference between religious and gang material.

60. On February 7, 2019 Wigert stated "if you are found not guilty it [the religious drawing] will be returned to you" however, after being found not guilty on February 14, 2019 Plaintiff's priceless artwork (his religious expression) simply disappeared, never to be seen again.

61. Plaintiff would attempt to address the issue of Wigert discriminating against him and Odinists in general, but first Reich would not process his grievance stating disciplinary issues are not grievable (though Plaintiff never once mentions or indicates ANYTHING to do with disciplinary), while Lochrie would state that Plaintiff changed his action, though he did not; both Reich and Lochrie refused to process Plaintiff's grievances in an effort to protect Wigert.

62. On January 29, 2020 Plaintiff was placed in RHU for exercising in the dayroom two days prior, though policy is clear that inmates are only to be put in

RHU when they pose a threat to the safety and security of the facility – there is no way for CCC to justify waiting two days to place Plaintiff in RHU, let alone for blatantly disregarding Montana statute (MCA 53-30-700, et seq.) that clearly states inmates may only be placed in RHU "as a response to the most serious and threatening behavior" and exercising in the dayroom does NOT qualify. Indeed, even if Plaintiff did what he was accused of, CCC had no authority to place him in RHU, particularly TWO DAYS after the alleged infraction occurred though this custom is practiced consistently by Guyer, Salmonsen, and Godfrey.

63. All of Plaintiff's legal materials were intentionally withheld from him by Guyer, Salmonsen, and Godfrey, despite the fact that they were well aware that he had an active case that required timely documents be filed with the court; Plaintiff grieved this issue and was told that policy and procedure would be reviewed, though this was not done, nor was anything else done and MSP would withhold Plaintiff's legal materials several more times in the period of time since.

64. The policy in effect at MSP between January 29, 2019 and January 1, 2020 is very clear in stating that cells must be well ventilated, appropriately heated, and maintained in sanitary conditions, yet at various times all of these were met with deliberate indifference and disregarded completely by Guyer, Salmonsen, and Godfrey ; policy at MSP is also very clear in stating that laundry services **must** be provided on a regular schedule, inmates **must** receive one hour out of cell recreation five days a week, and clothing and linens are to be exchanged on the same basis as general population, yet these too were met with deliberate indifference and disregarded completely at different times. Att. N-5.

65. On or about February 1, 2019 Plaintiff was denied all out of cell recreation and outside exercise for thirty-eight (38) consecutive days by Guyer, Salmonsen, and Godfrey, despite his pointing out to MSP officials that the U.S. Supreme Court

has held that these are one of life's basic necessities; Plaintiff was informed on numerous occasions that out of cell recreation and outside exercise were a privilege and this is how they are still treated at MSP today.

66. From February 1, 2019 through July of 2021 Plaintiff was continuously and consistently denied clean clothing while housed in RHU and SAU; the only reason he is not suffering this abuse now is that he is in general population, though it is still occurring. As only one example, over a six-week period of time Plaintiff only received clean socks five times, a clean towel eight times, and clean linens twice; indeed, Plaintiff went three weeks without a clean pair of socks, being denied another of life's basic necessities by Guyer and Salmonsen.

67. On February 17, 2019 Plaintiff had a seizure and could not get medical attention, could not even speak to anyone for over three hours; Plaintiff made it clear to Guyer and Salmonsen that not having emergency call buttons in the cells was a failure to protect and that he feared for his safety, but he was told there was no requirement for call buttons in the cells and that practices would not be changed, constituting deliberate indifference and cruel and unusual punishment.

68. On or about March 7, 2019 the air/ventilation in the cells of RHU went off and remained off for over two months, despite Plaintiff's numerous requests to maintenance and filing grievances, constituting deliberate indifference and cruel and unusual punishment by Guyer and Salmonsen.

69. From early March, 2019 to the present Plaintiff has continuously attempted to pursue some type of programming or educational opportunities at MSP as part of his interest in reformation guaranteed by Montana Constitution, Article II, §28 and the Eighth and Fourteenth Amendments to the U.S. Constitution, but has been consistently denied by Cobban and others; MSP is simply a warehouse for inmates

and wants these inmates to sit idle so they can reoffend once they are released and continue to generate revenue for the prison and Deer Lodge, Montana.

70. Beginning in August, 2019 MSP began returning mail to Plaintiff's family, friends, and Odinist organizations without providing any notice whatsoever, nor allowing any semblance of due process; when asked about this, several MSP officials (Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan) maintained that they did not have to give Plaintiff notice or any due process if they elected to deny any mail, though the U.S. Supreme Court has long ago held that denying mail **always** requires basic constitutional protections, such as notice, an opportunity to appeal, and review by an independent person.

71. Lochrie would blatantly hold that "mail that violates policy will be sent back without notice" though clearly established law requires that inmates be given notice and an opportunity to appeal the denial of **ANY** mail that is denied for **ANY** reason. Att. B-1.

72. Clark would likewise maintain that MSP could "return mail without notice to the inmate" which is a flagrant disregard for due process, the First Amendment, and clearly established law. Att. B-2.

73. Guyer would make the policy that denies inmates the right to notice (Att. B-14), then uphold the notion that MSP was not required to give inmates any type of notice, while Daugherty would outright blatantly lie by claiming that "Items that do not meet procedure for processing upon inspection of the envelope are returned sealed with notification on the envelope of the reason for the return" constituting an arbitrary and capricious denial of Plaintiff's First Amendment right; it should be noted that there is no way of knowing how many times Plaintiff actually had mail

returned or who denied it considering Defendants maintain that they can do both without notice to inmates. Att. B-3.

74. Plaintiff has absolute proof that, on at least one occasion, MSP opened a letter that was sent to him without giving either him or the sender notification and rather than being an oversight or simple negligence this must be seen as part of a pattern of unconstitutional behavior on Defendants' part; indeed, Plaintiff could easily have had thousands of letters illegally denied given the fact that Defendants do not give notice of these denials as required to and this constitutes arbitrary and capricious denial of Plaintiff's First Amendment right.

75. The most common reason given for denying letters without giving notice to inmates is if the envelope has a sticker-type stamp on it, though this is still unconstitutional and any argument that MSP has a legitimate interest in doing this is unavailing considering they arbitrarily pick and choose which letters to let through with sticker-type stamps on them, which they will tear off in the mail room and forward to the receiver, and those that are denied with no notice to the inmate, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right. Att. B-4/12.

76. MSP would compound this unconstitutional practice by telling Plaintiff that he was responsible for informing "anyone" of the new policy updates, updates that were made with no notice to inmates or the public, but enforced suddenly out of the blue; this is not only unconstitutional, but places an undue and unnecessary burden on Plaintiff, his friends, family, or anyone else who simply want to enjoy their First Amendment right to correspond with him, and again constitutes an arbitrary and capricious denial of Plaintiff's First Amendment right. Att. B-13.

77. Similarly, MSP would suddenly change their mail policy to prohibit postcards, colored paper, all greeting cards, any type of adhesive material, or letters written in colored pencil, crayon, or marker; this was all done arbitrarily, without cause or reason, and with no forewarning or allowance of commentary from the public and inmates. Att. B-14/17.

78. MSP has a blanket ban on pen-pal advertisements or even writing to pen-pals, and does this with absolutely no justification, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right; compounding this violation of the First Amendment, MSP arbitrarily picks and chooses what pen-pals they will allow and only denies those that do not meet their conservative christian values, rather than enforcing the policy equally, overly restrictive as it is and Plaintiff is challenging this policy and practice effected by Guyer and Salmonsen.

79. Plaintiff has had "sexually explicit" photographs denied by Clark, Milligan (twice), and Klanecky because MSP has the most restrictive practices regarding photos of any prison in the country, one that again conforms to their conservative christian values, with no regard for the First Amendment rights to either Free Speech or Freedom of Expression, and stretches the meaning of "sexually explicit" to include "subjects who pose provocatively" which constitutes an arbitrary and capricious denial of Plaintiff's First Amendment right. Att. B-30.

80. MSP allows inmates to only receive five photos in a single envelope and that each have the inmates name and number on the picture, which, aside from being enforced without notice to inmates or the public for comment, creates an undue and unnecessary burden on both inmates and the public. Att. B-32/36. Plaintiff is challenging this policy and practice effected by Guyer and Salmonsen.

81. MSP also only allows approved visitors to send books or money and this is limited to a single person, which deprives inmates of their First Amendment right to obtain books and money for commissary; this is the most restrictive means of achieving any legitimate interest MSP may have and no alternatives have ever been considered, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right. Att. B-37/41. Plaintiff is challenging this policy and practice effected by Guyer and Salmonsen.

82. Additionally, MSP denies inmates the ability to receive used books at all or books from "books to prisoners" programs, forcing them to purchase only new books at exorbitant prices or making indigent inmates and those without an approved visitor go without books from an outside source; again, this is the most restrictive means of achieving any legitimate interest MSP may have and no alternatives have ever been considered, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right. Att. B-37/41 Plaintiff is challenging this policy and practice effected by Guyer and Salmonsen.

83. Similarly, inmates are only allowed to send money to those on their approved list or order from companies only if inmates provide their tax ID number, which is unconstitutional and places an undue and unnecessary burden on inmates, their family and friends, all without cause or justification, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right. Att. B-37/41. Plaintiff is challenging this policy and practice effected by Guyer and Salmonsen.

84. On several occasions MSP has denied Plaintiff books without Due Process and for reasons that do not conform with the First Amendment; as part of the conspiracy to retaliate, discriminate, and harass Plaintiff by Godfrey in particular, but Harmon, Salmonsen, Reich, Foster, Swanson, and Lochrie, history and biography books have been erroneously deemed to advocate some type of racial

supremacy, even when they clearly do not and this unconstitutional practice is compounded by these individuals not affording Plaintiff due process and stealing money from his inmate account to return the books back without Plaintiff's express authorization. Att. B-42/51.

85. Foster would deny "March of the Titans" on March 20, 2020 then return it (at Plaintiff's expense and without his authorization) without allowing him an opportunity to appeal and MSP maintains an illegal banned book list, constituting both an arbitrary and capricious denial of Plaintiff's First Amendment right and deprivation of Due Process. Att. B-44.

86. Plaintiff has repeatedly made Defendants Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan aware that their discrimination, harassment, and retaliation (as well as their blanket ban on books, mail, money, etc.) are unconstitutional, even citing established law on point several times but they have each maintained that MSP can do whatever it wants because inmates lose their rights when they are convicted; they get away with this because there is no oversight or accountability.

87. On or about July 8, 2019 Plaintiff was falsely designated as a member of an STG by Short and Wigert without any evidence that he is and with no due process whatsoever; Plaintiff has attempted to challenge this designation several times and have it removed because it affects everything from housing, job assignments, and disciplinary to security classification, and even parole decisions, but has been consistently told (specifically by Cobban) that "STG validation is not appealable or grievable" (nor can Plaintiff have it removed) which clearly violates Due Process. Att. C-1/5.

88. It is unconstitutional to designate Plaintiff as STG with no hearing, evidence, or Due Process, then simultaneously not allow him any way to challenge or present evidence refuting it, yet Plaintiff was suddenly listed as "STG affiliated" between September 25,2019 and October 16,2019. Att. C-6/7.

89. In May, 2019 Montana House Bill 763 was enacted and later codified as MCA 53-30-700, et. seq. and this law is specific to RHU; it was written into MSP policy virtually verbatim at DOC 3.5.1, which took effect January 1, 2020 and allows for Plaintiff to challenge it in Federal Court the same as any other policy pursuant to the Eighth and Fourteenth Amendments to the U.S. Constitution.

90. The plain and mandatory language, as well as the Legislative intent, of MCA 53-30-700, et. seq. is clear as being meant to govern the practices in RHU: what qualifies inmates to be in RHU, how they are to be treated, and the overall conditions of confinement in RHU, with a particular emphasis on mentally ill inmates such as Plaintiff.

91. Godfrey and his coconspirators completely disregarded this law, first by changing RHU practices at MSP days before it was to take effect to make them more restrictive (so as to preempt the letter of the law having to be followed), then simply ignoring all complaints regarding the oppressive conditions of confinement in RHU.

92. Plaintiff wrote a four-page letter to Representatives Lynch and Dudik (responsible for passing House Bill 763) explaining how MCA 53-30-700, et. seq. was being ignored and abused at MSP. Att. D-1/4.

93. Plaintiff then made twenty-five (25) copies of this letter and attempted to send them to Senators Daines and Tester, Montana Department of Administration, Montana Human Rights Division, the U.S. Department of Justice Civil Rights

Division, National Prison Project, Human Rights Defense Center, Disability Rights Montana, First Amendment Clinic, Vera Institute, Great Falls Tribune, Montana Standard, and Independent Record (among others), however, ALL of these letters mysteriously disappeared, never reaching their respective destinations; MSP officials would not respond to Plaintiff's requests for investigation of these missing letters, nor process his grievances. Att. D-5/8.

94. The disappearance of these letters cannot be attributed to error or coincidence considering Plaintiff followed policy in marking them "privileged mail", sealed them in front of two different sergeants on four separate occasions, and handed the letters to them directly to send out: he gave Renfroe eight of these on February 14, 2020, and gave Walls three on February 19, 2020, three more on February 20th, and the last three on the 23rd. The **ONLY** inference that can be drawn from the disappearance of these letters is that they were intentionally disposed of and both Walls and Renfroe are liable for their loss, as this clearly is an arbitrary and capricious denial of Plaintiff's First Amendment right and Due Process.

95. This kind of retaliation continues to the present, where Plaintiff has had at least fourteen incoming/outgoing letters come up missing, all going to or coming from various Odinist organizations or individuals, again, *de minimus*, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right and denial of Due Process, as this may have been done for Plaintiff using his legal religious name; Reich has ensured that the disappearance of Plaintiff's mail is not investigated as part of her conspiracy with, *inter alia*, Godfrey and Salmonsen, nor has he been allowed to file grievances about this issue. Att. D-9/10.

96. In early January, 2020 Plaintiff was transferred back to the CCC as retaliation for his grievances and lawsuits and he was told this personally by Godfrey: on the morning he was transported Godfrey came to the transportation office at

approximately 5:30am (a time when he is NEVER at MSP, nor does he ever have business at the transportation office considering he is an AW at MSP) and with a smirk on his face said "I have to let you out of the hole, but this will ensure you are back before too long" referring to him going to CCC; Godfrey also said "I told you I would find a way to fuck you and this should do the trick since McTighe hates you."

97. Plaintiff was not supposed to go back to the CCC because of the lawsuit he had against them at that time and during his hearing to be released from Maximum Security Housing Plaintiff was specifically told he would not be sent to a regional, but moved to the High Side; upon arriving at the CCC McTighe made it very clear that he would do whatever it took to get rid of Plaintiff because he did not want him there and even said he would fabricate evidence if he had to, which he ultimately did.

98. Over the course of three weeks in January, 2020 Plaintiff was harassed incessantly by CCC staff, had his legal materials withheld (in the very case he had against them), was denied access to the law library, and told he could not send out legal mail by McTighe; additionally, numerous items of Plaintiff's personal property came up missing (including his television) and at least two letters with pictures in them that had been sent by a friend simply vanished from the acts and omissions of at least one Jane/John Doe, constituting an arbitrary and capricious denial of Plaintiff's First Amendment right and denial of Due Process.

99. On January 27, 2020 Plaintiff was exercising in the dayroom of C-Pod, where there is exercise equipment and inmates are allowed to do so; there were approximately thirty-five (35) other inmates exercising in the dayroom at the same time, though Plaintiff was exercising with a single workout partner, a practice that is allowed by policy.

100. On January 29, 2020 Plaintiff was placed in RHU for exercising in the dayroom two days prior, though both MSP policy and State statute are clear that inmates are only to be put in RHU "as a response to the most serious and threatening behavior" and when they pose a threat to the safety and security of the facility; there is no way for Godfrey and McTighe to justify placing Plaintiff in RHU for exercising in a dayroom that has exercise equipment in it and even if they could somehow come up with a reason to do so, waiting two days proves that Plaintiff was not considered a threat to the safety and security of the facility or he would have had to be locked up immediately at the point he presented such a threat.

101. The fact that there were approximately thirty-five (35) other inmates exercising in the dayroom at the same time (and setting aside the fact that inmates exercise in that dayroom EVERY single day) as Plaintiff and not one of them was placed in RHU or given a disciplinary report for it is a strong inference that he was the target of discrimination and retaliation exactly as McTighe told him that he would be when he arrived at the CCC.

102. Upon being placed in RHU on January 29, 2020 Plaintiff was not appraised by a qualified mental health professional, nor did he receive any orientation materials, though both are **required** by MSP policy and State statute.

103. Plaintiff has celiac disease and has continuously been denied a medically necessary diet the entire time he has been at the MSP; when Plaintiff requested a gluten-free diet the Doctor told him he had to write the dietician to receive a special diet, while the latter told him that it could not be approved without a Doctor's order, effectively giving him the run-around. Att. N-6/7.

104. Reich would state that she was confused and did not understand why the medical testing was not ordered to verify Plaintiff's celiac disease, asserting that the issue should be discussed with Winner, while Wolken would simply regurgitate the lower level responses when Plaintiff exhausted his administrative remedies, absurdly stating "[i]n order to get a special diet, you need to have an order from the doctor" though Plaintiff had repeatedly requested such an order from medical and Winner in particular. Att. N-8/9.

105. Plaintiff has "serious mental health problems" and Defendants have been deliberately indifferent to this the entire time he has been under their jurisdiction, particularly Winner: he does not receive treatment or therapy for this and keeping Plaintiff in solitary confinement for long periods of time as Defendants have has only exacerbated his mental illness and made it significantly worse.

106. Additionally, Defendants refuse to follow the law with regards to Plaintiff's mental illness and RHU considering he should never have been housed in RHU, though once he was he should have received daily checks by both medical and mental health, but did not; MCA 53-30-700, et. seq. is clear that inmates with mental health problems should not be housed in RHU for behaviors that stem from that illness and when they are it should "be for the shortest time possible" and "with the least restrictive conditions possible."

107. These apply to ALL inmates in RHU, though the statute places a particular emphasis on mentally ill inmates; there has been a staggeringly high number of suicides at MSP in the last few years that would shock the conscience of any reasonable person and these are directly attributable to the conditions of confinement at MSP, particularly in RHU.

108. MCA 53-30-703(7) mandates that a facility **must** establish written operational procedures to govern RHU that do not conflict with the provisions of MCA 53-30-701 through 725, though Godfrey, Salmonsen, Guyer, Reich, and other Defendants did not do so while Plaintiff was in RHU and their actual practices in RHU are in direct conflict with these statutes, as they are deliberately indifferent to the very statutes that were enacted to govern RHU; Plaintiff asserts he can challenge this pursuant to the Eighth and Fourteenth Amendments to the U.S. Constitution, and, *de minimus*, can sue Godfrey in his individual capacity for putting his personal predilections into practice prior to and after an official MSP policy was in place.

109. With the enactment of MCA 53-30-701(2)(c) and -717(1)-(3) Montana Legislators made their intent clear: inmates in RHU should be held under the least restrictive conditions possible (presumably less restrictive than they were when the law was passed), though just weeks before this statute took effect inmates in RHU could (by policy) order coffee, other drinks and food, and have their television after twenty days of clear conduct, yet Godfrey changed this to the **most** restrictive (no food, drinks, or television in RHU, among other restrictions) conditions possible and told Plaintiff personally that he was the one responsible for these changes; this was not done officially through policy initially, thus Plaintiff can sue Godfrey in his individual capacity for this, at minimum. Att. N-4.

110. Godfrey told Plaintiff personally that he was responsible for extending levels one and two of the RHU Max custody program, which is in direct conflict with the plain language that RHU should "only be used...for the shortest time possible"; given the fact that Plaintiff spent the next eight months in solitary confinement, was told in no uncertain terms by Godfrey that his stay was indefinite, and was only released because he was transferred to the FBOP, he

asserts he can challenge this pursuant to the Eighth and Fourteenth Amendments to the U.S. Constitution, and, *de minimus*, can sue Godfrey in his individual capacity for putting his personal predilections into practice prior to and after an official MSP policy was in place.

111. On February 5, 2020 Godfrey, Guyer, Salmonsen, Reich, and other Defendants effected policy MSP 3.5.1, which made conditions far more restrictive in RHU than they had been prior to January 1, 2020, when MCA 53-30-700, et. seq. took effect.

112. On February 4, 2020 Plaintiff was transferred back to MSP and placed in RHU to serve the final day of his detention time for the February 3 false conviction (constituting false imprisonment) and was never given orientation materials as required by law, depriving him of Due Process; on February 5, 2020 Plaintiff should have been released from RHU pursuant to policy (having completed his detention time), though Godfrey personally decided he should remain in RHU for an indeterminate amount of time (which constitutes excessive confinement in violation of the Eighth Amendment), without any of his personal and legal property, access to the courts, or a few of life's basic necessities and Plaintiff has standing to sue him for, *inter alia*, illegal detention considering Plaintiff posed no threat to the safety and security of the facility.

113. Plaintiff would later be taken into a room consisting of what he would come to learn was the Multi-Disciplinary Team ("MDT") and though there were several people present (including Reich), all authority was vested in Godfrey as AW of Security; Plaintiff was never given notice of this hearing as the law requires, was not allowed to present evidence or a defense, let alone given any type of appeal, all of which deprived him of basic due process.

114. The law requires that the MDT give Plaintiff their final decision and inform him of exactly how long he is to remain in RHU <u>at</u> this hearing, yet this was never done, nor did they review his status every seven days as the law mandates, again infringing on Plaintiff's due process protections; similarly, Plaintiff was asked to sign a classification summary on February 7, 2020 that did not show how long he had to do in the Max status program (inferring that it would be for an indeterminate amount of time), though he had spent a year in solitary confinement and been released just three weeks prior to this.

115. Despite the fact that there were at least five empty cells on the block Plaintiff was moved into a cell on February 7, 2020 (told personally by Walls that Godfrey wanted him in THAT particular cell) that was covered in blood and feces, with grime and food caked to the floor that looked to be weeks (if not months) old and smelled of urine and vomit on top of this, though was refused cleaning supplies for five days; Plaintiff would challenge the denial of cleaning supplies and ask to be tested for anything he may have contracted in that cell, but both were refused and since then Plaintiff has had a viral skin disease/infection that causes bleeding, rot, rash, and other symptoms that doctors seem unable to treat. Att. F.

116. On February 12, 2020 Plaintiff handed his classification and disciplinary appeals directly to Godfrey, who promptly threw them in the trash, depriving Plaintiff of his due process and equal protection rights.

117. In early February, 2020 Godfrey would stand at Plaintiff's cell door and tell him that he did not like White people and that Odinism was nothing more than "White supremacy" while on another day would say to him that he knew how to "fix" him: Godfrey told Plaintiff he would have him sent to the "blackest" prison he could and the inmates would take care of him.

118. Godfrey would indeed ensure that Plaintiff was sent to a prison where he was assaulted more than once, at least once at Godfrey's behest, as it was by other officers who told Plaintiff why they were assaulting him; the day that Plaintiff arrived at USP Terra Haute he was told by the SIS officer that he did not belong in that prison because only violent sex offenders, transsexuals, homosexuals, and other deviants were housed at that facility, stating that "whoever DJ is [Godfrey] does not like you very much, because he put you here and asked that we teach you a lesson."

119. Plaintiff would attempt to grieve Godfrey's discrimination and threats on February 7, 2020, but received no response and when he attempted to escalate it to the next level, Swanson would refuse to process it as part of the conspiracy to retaliate on Plaintiff and deny him Due Process; Swanson would claim that "Your action requested is classification therefore it cannot be grieved" though Plaintiff's action requested was "I want AW Godfrey to cease his discrimination against Whites and Odinists" inferring that Swanson not processing his grievance was done as part of the conspiracy to retaliate, discriminate, and harass Plaintiff.

120. Warden Guyer would later "grant" Plaintiff's grievance for being threatened and retaliated on by Godfrey, though this was simply a means of pacifying Plaintiff, as MSP officials do not actually conduct the investigations they claim to, nor did anything ever change, as Godfrey doubled down on his attacks against Plaintiff. Att. H-2/3.

121. On February 13, 2020 Plaintiff was denied a tablet (the only means by which inmates at MSP can access the law library) as retaliation for his grievances and lawsuit, without any Due Process; he would not be given a tablet for several weeks and Godfrey was directly responsible for this, telling Plaintiff "you think

you're slick, but I got something for you" referring to his ability to ensure Plaintiff did not get a tablet or access to the law library. Att. G-1.

122. On February 20, 2020 Plaintiff began a peaceful protest in the form of a hunger strike to bring attention to the conditions of confinement in RHU and being deprived of life's basic necessities; despite making it abundantly clear that it was a peaceful protest, Plaintiff was harassed and degraded every day, all day, and ultimately retaliated on for conduct protected by the First Amendment to the U.S. Constitution.

123. On February 26, 2020 Godfrey, McNeil, and approximately fifteen Jane/John Does (including several of the gestapo-like IPS) came to Plaintiff's cell door, made him cuff up, tore his cell apart (intentionally scattering his legal materials all over the floor, walking on them and throwing a number of pages in the toilet so he could not recover them, broke his radio and headphones, along with other destruction in an obvious attempt to intimidate him into stopping his peaceful protest) and threatened to physically assault Plaintiff and extend his stay in RHU if he did not cease his hunger strike; this chilled Plaintiff's First Amendment right to the point that he began eating the very next meal, though Godfrey still extended his stay in RHU and retaliated on Plaintiff several times afterwards.

124. One example of the way in which Godfrey retaliated on Plaintiff, making good on his threats, was to send Casemanager Lemmon an email stating that "anyone can advance except Warner" referring to the levels that inmates must progress through in order to get out of RHU; Plaintiff was eligible to advance to the next level, though because of this email he did not, constituting retaliation, excessive confinement, and denial of Due Process.

125. On February 27, 2020 Plaintiff asked Michelle Stey why she had not been present the day before (when Godfrey and others had threatened and intimidated him in a show of force), considering she is the mental health representative for the MDT, and he was told that she was instructed to stay away from RHU that day; Stey had also stood at Plaintiff's cell door on February 6, 2020 and told him (with regards to him being placed in RHU for exercising in the dayroom) "they only did this because of who you are and what you represent to them."

126. Similarly, on February 5, 2020 a psych tech named Meaders told another psych tech when both were standing outside of Plaintiff's cell door that he was the only inmate at MSP that had "a different set of rules" applied to him than others did.

127. In August, 2021, as part of the conspiracy to retaliate on, harass, and discriminate against Plaintiff, Wigert would write him up for something she **knew** was not a rule infraction (a visit), in an effort to have him removed from his job and as part of the conspiracy to harass, as well as discriminate and retaliate against Plaintiff, though this was subsequently dismissed by the Warden. Att. A-19.

128. It is not within Wigert's duties and responsibilities to monitor Plaintiff's visits, yet she has an unreasonable interest in him that causes her to cross lines that she should not cross; indeed, on two separate occasions two different Sgt's told Plaintiff that they had been questioned by Wigert in an effort at finding something to lock him up in RHU for and one of them told Plaintiff that "Wigert is more interested in you than what happened in the chow hall the other day" referring to a gang assault that had taken place. Attachment H-7. On three separate occasions Plaintiff wrote grievances against Wigert in an attempt to get her to cease her discrimination, harassment, and retaliation, though nothing was ever done and no investigation was conducted. Att. A-17/18, A-20, and H-7.

129. Similarly, sometime in November, 2021 a Jane Doe from MSP (perhaps Wigert or Klanecky) would contact an individual outside of the prison and slanderously defame Plaintiff, telling them that he was a "gang leader" despite the indisputable fact that Plaintiff does not belong to any gang or Security Threat Group, let alone some type of "leader."

130. On September 28, 2021 Godfrey would place Plaintiff in RHU without cause, reason, justification, or a disciplinary report, constituting deprivation of Due Process and false imprisonment; the next day Godfrey would personally tell Plaintiff that he knew he had done nothing wrong, but that he had been locked up "as a precaution" and again Plaintiff wrote a grievance against Godfrey for retaliation and discrimination and **again** it was "granted" for investigation, though no investigation was ever conducted and still nothing changed. Att. H-4.

131. On the same day Godfrey placed Plaintiff in RHU, the personal clothing and brand new shoes he was wearing were thrown in the trash by a Jane/John Doe IPS member and Plaintiff learned this from Swanson, who personally told him that she had watched the camera and witnessed his personal property being thrown away, but would not tell him by whom; the fact that Swanson told Plaintiff this and MSP reimbursed him for their loss is evidence tending to prove retaliation and deprivation of Due Process.

132. Again on this same day Plaintiff's cell was destroyed (personal pictures ripped up, commissary purchased food and drinks opened and poured all over his books and legal materials, property scattered all over the floor where it was walked on or thrown in the toilet, etc.) by at least one Jane/John Doe and his religious medallion was intentionally broken by this IPS member; this last could not have been accidental considering the medallion was lying flat on his desk when he was taken to RHU and the chain had been broken in two places (the piece where the

clasp had been being completely missing), while the metal medallion itself had been broken where it connected to the chain, so that it would no longer hang on any chain and the fact that MSP reimbursed him for this loss is evidence tending to prove retaliation, excessive force, and placing a substantial burden on Plaintiff's religious practice. Att. H-5. MSP officials did **not** give him just compensation for this.

133. Shortly after this, as part of the conspiracy to retaliate on, harass, and discriminate against Plaintiff, Wigert would send IPS into his cell again; Plaintiff was told by one of the IPS officers that Wigert had specifically sent them to his cell and they were instructed to "tear it up" in retaliation for Plaintiff writing grievances against her and Godfrey and this was accomplished by two John Does. Att. H-7.

134. While at CCC in late 2018 Plaintiff obtained a wooden set of runes (essential to the practice of his religion) and these are reflected on his January 3, 2019 property inventory; while the standard form lists "Rune cards" Plaintiff had an actual set of twenty-four wooden runes in a pouch (he has never obtained a "deck" of rune cards nor would he ever) and regardless of how he had obtained them, they were his property and required Due Process to take from him.

135. After being transferred back to the MSP Plaintiff's wooden rune set simply disappeared and he was told that they were sent to Stefalo to verify that they were allowed by policy, and though they were not, neither Swanson, Guyer, or Wolken would even address the issue, let alone find Plaintiff's runes so they could be returned to him or he could send them out to his family pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution; at no time did Plaintiff ever request reimbursement for their loss, but wanted his property returned to him (and still does) because they had far more than monetary value to him. Att. I-7.

136. On June 7, 2019 Coughlin took another set of runes out of Plaintiff's cell and gave him a summary action/property receipt (which should have happened with the first set of runes that disappeared) on which Plaintiff clearly marked that he wanted a hearing; such a hearing would have determined, at minimum, what exactly was removed from Plaintiff's cell, though this was never done and his religious property was disposed of without any Due Process. Att. I-8.

137. Upon being returned from the FBOP Reich, Foster, and Salmonsen would dispose of a large quantity of Plaintiff's personal property without any Due Process or just compensation; Reich and Salmonsen would make a verbal agreement that Plaintiff memorialized in an informal resolution granted in full by Salmonsen, but neither would honor it, constituting both breach of contract and denial of the just compensation clause of the Fifth Amendment to the U.S. Constitution in both their individual and official capacities. Att. I-9.

138. Specifically, Plaintiff returned to MSP with almost a $1,000.00 worth of personal property and an MP3 player he had purchased in the FBOP that had 407 songs on it and it could be argued that property acquired in Federal prison is not subject to State post-deprivation procedures; nonetheless, Plaintiff asserts that once Reich and Foster accepted his personal property into the facility it became subject to Due Process under any standard, particularly where Reich told Plaintiff initially that he could have it all, but Foster determined that he could **not** have it pursuant to prison policy.

139. Reich would later concede to Foster and throw away several hundred dollars in clothes, food, and other commissary, without allowing Plaintiff an opportunity to get approval for it or send it to his family, which deprived him of both Due Process and just compensation; Reich had told Plaintiff after this was done that he could have his MP3 player at MSP (that it would be "grandfathered" in), then

would go back on this, offering that in the alternative Salmonsen would reimburse
Plaintiff the cost of the device and the songs on it, though this too would not be
done, again constituting both breach of contract and denial of the just
compensation clause of the Fifth Amendment to the U.S. Constitution in both their
individual and official capacities. Att. I-9.

140. Plaintiff had at least fourteen incoming/outgoing letters from Odinist
groups/individuals come up missing, which is discrimination, retaliation, and
denial of his religious practice, as well as the First Amendment right to send or
receive mail, as it constitutes an arbitrary and capricious denial of Plaintiff's First
Amendment right; Plaintiff knows that these letters are missing because friends
and family members have contacted these groups/individuals and every one
admitted that they either never received a letter Plaintiff sent or sent a letter that he
never received and, as part of the conspiracy at MSP to harass, discriminate and
retaliate against Plaintiff because of his religious beliefs and litigation, Reich
would not allow Plaintiff to file grievances on this issue.

141. Cobban has made a point of threatening and retaliating on Plaintiff, as well
as denying him Due Process and Equal Protection of the laws; aside from refusing
Plaintiff's every effort at pursuing some type of educational opportunity (as part of
the right to rehabilitation guaranteed him by the Montana Constitution and
enforceable under the Eighth and Fourteenth Amendments to the U.S.
Constitution), Cobban also lied on Plaintiff's classification appeal, stating he had
"objectively score[d]" as Max custody, when he did not and she had given him an
override to justify his placement in solitary confinement for a year, depriving him
of Due Process. Att. K-1/2.

142. Godfrey, Salmonsen, and Wigert arbitrarily denied Plaintiff a gym job that
he qualified for out of discrimination and retaliation and with no Due Process and

this is clear considering the two gym officers told Plaintiff personally that they wanted to hire him but that he was denied for being "White" and his personal beliefs; Wigert would also tell Plaintiff personally that STG inmates who were part of the same type of group could not work in the same job together at the same time, which is one example of how the STG designation affects inmates and thus requires Due Process. Att. K-3/8.

143. MSP is denying one of life's basic necessities in the form of exercise and fresh air to general population inmates, including Plaintiff; Godfrey, McNeil and Salmonsen are directly responsible for the denial of both gym time and outside recreation through their exaggerated response to a perceived security need and failure to properly train and maintain officers to staff these areas.

144. Additionally, there is admittedly no access to drinking water or bathroom facilities outside for the entirety of the winter months, which is unconstitutional, as it effectively denies Plaintiff and other inmates outside exercise and Godfrey, McNeil, and Salmonsen are directly responsible for this; though Plaintiff has averaged about one gym and one outside recreation period per week over the past three months or so (in general population), inmates in RHU and SAU (Max custody inmates) get two hours outside and one hour out-of-cell in the dayroom every single day, which violates Plaintiff's Eighth and Fourteenth Amendment protections. Att. K-9.

145. MSP continues to steal money from Plaintiff's inmate account without his authorization and has even taken money when he specifically states he does **not** authorize its removal.

146. Similarly, Reich, Harmon, Foster, Cobban, and several John/Jane Does refuse to allow Plaintiff to send mail or property that they assert he cannot have to

where he wants it sent, but will still charge him to send it out; Plaintiff maintains that regardless of the reason mail or property is denied it still remains **his** property and he has the only discretion to do what he wants to with it, particularly where he is forced to pay to send it out. Att. K-10/12.

147. On January 3, 2019 Olive and Marquez used excessive force against Plaintiff, the former emptying a large canister of OC fog on him, while the latter emptied an entire can of liquid OC on him (excessive use of chemical agents), with deliberate indifference to the risk of injuries it would cause him; Plaintiff's body was burned and blistered for several days afterwards and he was refused medical treatment, while both McTighe and Daugherty encouraged and endorsed this use of force on him. Att. L-1/6.

148. Klanecky would answer both an informal and a grievance on the same issue (Att. B32/33) as would Cobban (Att. B-37/39), which constitutes a deprivation of Due Process.

149. Klanecky would dismiss Plaintiff's disciplinary finding for STG, then *sua sponte*, find him guilty of violating mailroom policy without allowing Plaintiff to prepare any defense and with absolutely zero evidence the card in question had ever been in the mailroom; indeed, the card was found on a desk in an envelope that simply read "Reid Danell" nothing more and had never been in the mailroom at all, constituting a false conviction and denial of Due Process.

150. Trinity is deliberately indifferent to the nutritional needs of inmates at CCC and this is intentional as they generate a profit from serving the most substandard fare they can find, food that is literally marked "not for human consumption"; while at the CCC Plaintiff lost weight, was constipated, fatigued, and his bones hurt because of Trinity's deliberate indifference, though he was subsequently

denied medical attention and both McTighe and Wolken would not investigate Plaintiff's complaints, nor change anything. Att. M-1/6.

151. Plaintiff has personally been told by Godfrey, Reich, Salmonsen, and McTighe (among others) that inmates do not have any rights in prison except what they decide to give them, that inmates forfeit their rights when they commit crimes and that prison policies will not be changed because of this unless a court orders them to do so.

152. Plaintiff has been told personally by more than twenty (20) MSP employees that Godfrey hates White people, discriminates against them at the prison (staff and inmates alike), and favors blacks, though it remains to be seen if any of these will step forward to expose him when the time comes to do so; indeed, the turnover for officers at MSP has increased drastically since Godfrey became AW, to the point that it has been in the news several times in recent years.

153. In response to a July 12, 2018 email (whose subject line was "RE: Warner grievances") from the Grievance Coordinator asking what he wanted to do about several grievances filed by Plaintiff, Godfrey asserted that Mr. Warner is "a problem inmate" and this, *de minimus*, infers that Godfrey had retaliatory intent for Plaintiff's grievance activity.

## VI. EXHAUSTION

154. Plaintiff has exhausted all available administrative remedies, consistently made Defendants aware of their unconstitutional acts and omissions, and cited relevant case law precedent to ensure they could not later claim that they were unaware of clearly established law.

## VII. LEGAL CLAIMS

155. Nepotism runs rampant at the MSP, with several families having several members working there, which is an inference that conspiracies and retaliation are likely to occur given the fact that if one person has a problem with an inmate, then likely their family members will as well.

156. Defendants are sued under the continuing wrongs and in some places the totality of conditions theories; the underlying philosophy at MSP is that inmates do not have a right to Due Process in prison and _every_ aspect of the conditions of confinement are informed by this because Godfrey, Salmonsen, and Guyer fail to train officers otherwise.

157. Conversely, because Plaintiff has a constitutionally-conferred right to rehabilitation in Montana the standards typically applied to prisoner civil rights litigation do not apply here, as **all** of his claims must be analyzed in conjunction with this right, given the fact that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Indeed, because Montana punishments **must** be founded on the principle of reformation, any act or omission that is not, particularly where no process is afforded, is _de facto_ cruel and unusual, in violation of the Eighth Amendment to the U.S. Constitution.

158. Plaintiff presents constitutional challenges to several customs and policies, all of which either Godfrey, Guyer, or Salmonsen are directly responsible for effecting; aside from the Constitutionally-conferred right to rehabilitation Plaintiff enjoys his legal claims under the First, Eighth, and Fourteenth Amendments

include the fact that he has a liberty interest in freedom from incarceration and in restorative justice given the nature and duration of his sentence.

159. Conversely, even under a class of one theory, Plaintiff has clearly been the victim of discrimination and retaliation on several discrete occasions: Godfrey would stand at Plaintiff's cell door and tell him that he did not like White people and that Odinism was nothing more than "White supremacy"; Godfrey and McTighe would later tell Plaintiff personally that so long as they were in their respective positions, Odinism would never be accommodated, and that if he continued to pursue the issue they would simply lock him up so he could not practice his religion at all; given Stey stating "they only did this because of who you are and what you represent to them" and Meaders' assertion that Plaintiff was the only inmate at MSP that had "a different set of rules" applied to him than others did, it is obvious to any reasonable person that Plaintiff does not receive equal protection of the laws. Whether this is due to his religious or political beliefs, his grievances or lawsuits, some other reason, or a combination of all of them is for a court to determine, however, the only inference to be drawn from Defendants acts and omissions herein is that Plaintiff has suffered discrimination and retaliation.

## A. 42 U.S.C. §1985

160. Many of Plaintiff's legal claims for conspiracy are founded on the meeting of the minds between Defendants who dislike Plaintiff personally and/or his religious beliefs and the mentality that officers must protect one another against liability and litigation.

161. Conspiracy claims under 42 U.S.C. §1985 are distinct from those of §1983, in that the former focus on a meeting of the minds, which can be inferred on the

basis of circumstantial evidence, while the latter is intent-based and Plaintiff's legal claims allege a number of separate conspiracies that specifically fall under §1985. Like many of Plaintiff's retaliation claims, these conspiracy claims arise from the theory that at a certain point (prior to Godfrey asserting that Plaintiff was a "problem inmate") MSP and CCC employees had a meeting of the minds akin to the "blue wall" mentality of police officers, wherein they will, without exception, stand together against an individual or group of people that threaten the very foundation of the way things have always been done and this is a long-standing custom at MSP that was brought to bear on Plaintiff by Godfrey.

162. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶34-153 as though set forth here in full; Plaintiff has a plethora of separate and discrete claims for conspiracy given that Godfrey conspired with at least one other person, on at least one occasion, to retaliate, discriminate, and harass Plaintiff and infringe on his Constitutional rights in violation of 42 U.S.C. §1985: Godfrey chilled Plaintiff's First Amendment right when he conspired with, *inter alia*, McNeil, to threaten, intimidate, and retaliate against Plaintiff for peacefully protesting the conditions of confinement in RHU on February 26, 2020; Godfrey and McTighe conspired together to illegally change DHO Rivas' June 20, 2018 disciplinary finding; Godfrey and at least one John/Jane Doe conspired to ensure that Plaintiff was placed in USP Terra Haute to be assaulted exactly as Godfrey asserted he would beforehand; Godfrey in particular, but Harmon, Salmonsen, Reich, Foster, Swanson, and Lochrie all conspired to deny Plaintiff history and biography books or allow him to challenge violations on several occassions.

163. Plaintiff realleges and incorporates by reference the facts enumerated in ¶115 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Winner, and Walls for conspiring to purposely place Plaintiff in

an unsanitary cell on February 7, 2020, not allowing him to clean it, and refusing to test him for anything he may have contracted.

164. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶93/94 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Renfroe (eight claims), and Walls (nine claims) for conspiring to make at least seventeen privileged letters, that were sent by Plaintiff to people and groups to expose the oppressive, cruel and unusual punishment in RHU, disappear.

165. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for conspiring to make fourteen letters that were sent by Plaintiff to Odinists/groups, or sent to him by Odinists/groups, disappear.

166. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶39-43 as though set forth here in full; Plaintiff has a claim against for Godfrey and Stefalo conspiring to deny an outdoor sacred space with a fire pit dedicated to the Gods for Odinist use.

167. Plaintiff realleges and incorporates by reference the facts enumerated in ¶52 as though set forth here in full; Plaintiff has a claim against Godfrey and Stefalo for conspiring to deny Odinists the ability to hold Blót **on** the holy day that has solar significance.

168. Plaintiff realleges and incorporates by reference the facts enumerated in ¶49 as though set forth here in full; Plaintiff has a claim against Godfrey, Cobban, and Stefalo for conspiring to refuse to place Odinist materials on the tablets.

**B. RLUIPA**

169. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶39-43 as though set forth here in full; Plaintiff has a claim against Godfrey and Stefalo for the substantial burden placed upon his religious practice in denying an outdoor sacred space with a fire pit dedicated to the Gods for Odinist use.

170. Plaintiff realleges and incorporates by reference the facts enumerated in ¶52 as though set forth here in full; Plaintiff has a claim against Godfrey and Stefalo for the substantial burden placed upon his religious practice in denying Odinists the ability to hold Blót **on** the holy day that has solar significance.

171. Plaintiff realleges and incorporates by reference the facts enumerated in ¶49 as though set forth here in full; Plaintiff has a claim against Godfrey, Cobban, and Stefalo for the substantial burden placed upon his religious practice in refusing to place Odinist materials on the tablets.

172. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Wigert for the substantial burden placed upon his religious practice in confiscating his religious drawing and never returning it to Plaintiff.

173. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶134/135 as though set forth here in full; Plaintiff has a claim against Jane/John Doe (perhaps Stefalo) for the substantial burden placed upon his religious practice in taking the set of wooden runes he had in his possession on January 29, 2019 and never returning them to him.

174. Plaintiff realleges and incorporates by reference the facts enumerated in ¶136 as though set forth here in full; Plaintiff has a claim against Coughlin for the substantial burden placed upon his religious practice in taking the set of runes Plaintiff had on June 7, 2019 and never returning them to him.

175. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for substantially burdening his religious practice through the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups.

176. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of his religious medallion on September 28, 2021, as this substantially burdens his religious practice.

177. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶50/51 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Stefalo, and Salmonsen for the substantial burden placed upon his sincerely held religious requirement to fast and feast for the entire Winter Nights period.

## C. First Amendment

178. Plaintiff's legal claims under the First Amendment include the fact that he asserts he has a constitutionally-conferred right to rehabilitation that is enforceable through the First Amendment, in that the U.S. Supreme Court has held that education is a property right and education is an essential element of rehabilitation.

## 1. Retaliation

179. Plaintiff's legal claims for retaliation include inferences to the timing, chronology, and duration of certain adverse actions (such as the show of force on February 26,2020 in the midst of Plaintiff's peaceful protest pursuant to the First Amendment) and stem from Plaintiff's filing of grievances and lawsuits, peaceful protests, and personal beliefs.

180. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Wigert for confiscating his religious drawing and never returning it to Plaintiff in retaliation for his personal beliefs and grievances.

181. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/61, 87, 127/129, 133, and 142 as though set forth here in full; Plaintiff has separate and discrete claims against Wigert for retaliation based upon these facts.

182. Plaintiff realleges and incorporates by reference the facts enumerated in ¶96 as though set forth here in full; Plaintiff has a claim against Godfrey for the retaliatory transfer to CCC in January, 2020 as this was done intentionally out of retaliation for his grievances and lawsuits.

183. Plaintiff realleges and incorporates by reference the facts enumerated in ¶118 as though set forth here in full; Plaintiff has a claim against Godfrey for ensuring he was sent to USP Terra Haute and assaulted by officers there as this was done intentionally out of discrimination.

184. Plaintiff realleges and incorporates by reference the facts enumerated in ¶116 as though set forth here in full; Plaintiff has two claims against Godfrey for throwing away his appeals on February 12, 2019 as this was done intentionally out of retaliation for his grievances and lawsuits.

185. Plaintiff realleges and incorporates by reference the facts enumerated in ¶130 as though set forth here in full; Plaintiff has a claim against Godfrey for the false imprisonment of Plaintiff on September 28, 2021 as this was done intentionally out of retaliation for his grievances and lawsuits.

186. Plaintiff realleges and incorporates by reference the facts enumerated in ¶112 as though set forth here in full; Plaintiff has a claim against Godfrey for

excessive confinement on and after February 5, 2020 as this was done intentionally out of retaliation for his grievances and lawsuits.

187. Plaintiff realleges and incorporates by reference the facts enumerated in ¶124 as though set forth here in full; Plaintiff has a claim against Godfrey for excessive confinement from the email he sent Lemmon on May 4, 2020 which arbitrarily and capriciously kept him for at least another thirty (30) days beyond the scheduled time for his release from RHU and this was intentionally done in retaliation for his peaceful protest on February 26, 2020.

188. Plaintiff realleges and incorporates by reference the facts enumerated in ¶142 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, and Wigert for denying him a job in the gym in retaliation for his personal beliefs, grievances, litigation and out of retaliation for his grievances and lawsuits.

189. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶53-55 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey and McTighe for the false conviction of assault at the CCC.

190. Plaintiff realleges and incorporates by reference the facts enumerated in ¶123 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, McNeil, and several John/Jane Does for the show of force on February 26, 2020 in response to Plaintiff's peaceful protest as this chilled his First Amendment rights.

191. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Reich and Lochrie not allowing him to grieve the for confiscation of his religious drawing.

192. Plaintiff realleges and incorporates by reference the facts enumerated in ¶84 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Reich, Harmon, Foster, Swanson, and Lochrie for illegally denying him history and biography books as retaliation for his personal beliefs, grievances, and litigation.

193. Plaintiff realleges and incorporates by reference the facts enumerated in ¶85 as though set forth here in full; Plaintiff has a claim against Foster for denying "March of Titans" as retaliation for his personal beliefs, grievances, and litigation.

194. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶93/94 as though set forth here in full; Plaintiff has separate and discrete claims against Renfroe (eight claims) and Walls (nine claims) for the disappearance of privileged letters that were sent by Plaintiff to people and groups to expose the oppressive, cruel and unusual punishment in RHU as this was done intentionally out of retaliation for his grievances and lawsuits.

195. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups as others are allowed to send or receive mail as this was done intentionally out of retaliation for his grievances and lawsuits.

196. Plaintiff realleges and incorporates by reference the facts enumerated in ¶98 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the disappearance of at least two letters containing photographs at the CCC that were sent to Plaintiff and his personal property as this was done intentionally out of retaliation for his grievances and lawsuits.

197. Plaintiff realleges and incorporates by reference the facts enumerated in ¶121 as though set forth here in full; Plaintiff has a claim against Godfrey for ensuring he could not have a tablet for a month in retaliation for his grievances and litigation.

198. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of his religious medallion as this was done intentionally out of retaliation for his grievances and lawsuits.

199. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of the personal property in his cell on September 28, 2021 as this was done intentionally out of retaliation for his grievances and lawsuits.

200. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of the personal property he was wearing when he went to RHU on September 28, 2021 as this was done intentionally out of retaliation for his grievances and lawsuits.

201. Plaintiff realleges and incorporates by reference the facts enumerated in ¶134/135 as though set forth here in full; Plaintiff has a claim against Jane/John Doe (perhaps Stefalo) for the substantial burden placed upon his religious practice in taking the set of wooden runes he had in his possession on January 29, 2019 and never returning them to him as retaliation for his personal beliefs, grievances, and litigation.

## 2. Freedom of Speech

202. All legal claims for denying Freedom of Speech and Expression are founded on the Fundamental right to send and receive mail, books, and photographs, as well as the corresponding protections that do not allow deprivations that are arbitrary or capricious; conversely Defendants have never offered legitimate interests for their denials or examined any alternatives, though the burden of both is entirely theirs.

203. Plaintiff realleges and incorporates by reference the facts enumerated in ¶86 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan for the blanket bans they have placed on certain mail, photos depicting women who "posed provocatively," used books, books from "books to prisoners" programs, pen-pals, and the sending or receiving of money to or from any source an inmate elects to.

204. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶70-76, and 80 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan for denying his mail without notice.

205. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶70-76, and 80 as though set forth here in full; Plaintiff has separate and discrete claims against 15 Jane/John Does given the fact that there is no way to demonstrate how many letters or publications Plaintiff actually had denied, nor who may have done this, since MSP maintains that they do not have to provide notice.

206. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶70-76, and 80 as though set forth here in full; Plaintiff has a claim against a Jane/John Doe for opening and photocopying a letter from his friend Richard

Callaway without providing either notice as to why it was denied or giving them an opportunity to appeal the denial.

207. Plaintiff realleges and incorporates by reference the facts enumerated in ¶79 as though set forth here in full; Plaintiff has separate and discrete claims against Klanecky, Milligan (two claims), and Reich for illegally denying photos for being "sexually explicit" when they were not.

208. Plaintiff realleges and incorporates by reference the facts enumerated in ¶75 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan for denying his mail that had a stamp on the envelope without notice, arbitrarily removing some stamps and forwarding the mail to the inmate, or allowing other mail through with the stamp still on the envelope.

209. Plaintiff realleges and incorporates by reference the facts enumerated in ¶78 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich (two claims), Cobban, and Milligan (three claims) for denying his mail from pen-pals and placing blanket bans on pen-pals.

210. Plaintiff realleges and incorporates by reference the facts enumerated in ¶82 as though set forth here in full; Plaintiff has claims against Salmonsen and Guyer for placing blanket bans on used books.

211. Plaintiff realleges and incorporates by reference the facts enumerated in ¶77 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich, and Daugherty for placing blanket bans on greeting cards, postcards, etc.

212. Plaintiff realleges and incorporates by reference the facts enumerated in ¶77 as though set forth here in full; Plaintiff has separate and discrete claims against

Salmonsen, Guyer, Reich, and Daugherty for placing blanket bans on mail written in colored pen, pencil, marker, or crayon.

213. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶81 and 83 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen and Guyer for placing blanket bans on sending or receiving money to or from any person, organization, or business.

214. Plaintiff realleges and incorporates by reference the facts enumerated in ¶84 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Reich, Harmon, Foster, Swanson, and Lochrie for illegally denying him history and biography books.

215. Plaintiff realleges and incorporates by reference the facts enumerated in ¶85 as though set forth here in full; Plaintiff has a claim against Foster for denying "March of Titans."

216. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶93/94 as though set forth here in full; Plaintiff has separate and discrete claims against Renfroe (eight claims) and Walls (nine claims) for the disappearance of privileged letters that were sent by Plaintiff to people and groups to expose the oppressive, cruel and unusual punishment in RHU.

217. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups as others are allowed to send or receive mail.

218. Plaintiff realleges and incorporates by reference the facts enumerated in ¶98 as though set forth here in full; Plaintiff has separate and discrete claims against

John/Jane Does for the disappearance of at least two letters containing photographs at the CCC that were sent to Plaintiff and personal property.

## 3. Freedom of Expression

219. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Wigert for confiscating his religious drawing and never returning it to Plaintiff.

220. Plaintiff realleges and incorporates by reference the facts enumerated in ¶79 as though set forth here in full; Plaintiff has separate and discrete claims against Klanecky, Milligan (two claims), and Reich for illegally denying photos for being "sexually explicit" when they were not.

221. Plaintiff realleges and incorporates by reference the facts enumerated in ¶77 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich, and Daugherty for placing blanket bans on greeting cards, postcards, etc.

222. Plaintiff realleges and incorporates by reference the facts enumerated in ¶77 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich, and Daugherty for placing blanket bans on mail written in colored pen, pencil, marker, or crayon.

223. Plaintiff realleges and incorporates by reference the facts enumerated in ¶85 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich, and Daugherty for keeping a banned book list.

## 4. Freedom of Religion

224. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶39-43 as though set forth here in full; Plaintiff has a claim against Godfrey and

Stefalo for the substantial burden placed upon his religious practice in denying an outdoor sacred space with a fire pit dedicated to the Gods for Odinist use.

225. Plaintiff realleges and incorporates by reference the facts enumerated in ¶52 as though set forth here in full; Plaintiff has a claim against Godfrey and Stefalo for the substantial burden placed upon his religious practice in denying Odinists the ability to hold Blót **on** the holy day that has solar significance

226. Plaintiff realleges and incorporates by reference the facts enumerated in ¶49 as though set forth here in full; Plaintiff has a claim against Godfrey, Cobban, and Stefalo for the substantial burden placed upon his religious practice in refusing to place Odinist materials on the tablets.

227. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Wigert for the substantial burden placed upon his religious practice in confiscating his religious drawing and never returning it to Plaintiff.

228. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶134/135 as though set forth here in full; Plaintiff has a claim against Jane/John Doe (perhaps Stefalo) for the substantial burden placed upon his religious practice in taking the set of wooden runes he had in his possession on January 29, 2019 and never returning them to him.

229. Plaintiff realleges and incorporates by reference the facts enumerated in ¶136 as though set forth here in full; Plaintiff has a claim against Coughlin for the substantial burden placed upon his religious practice in taking the set of runes Plaintiff had on June 7, 2019 and never returning them to him.

230. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95as though set forth here in full; Plaintiff has separate and discrete claims against

John/Jane Does for substantially burdening his religious practice through the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups.

231. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of his religious medallion on September 28, 2021, as this substantially burdens his religious practice.

232. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶50/51 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Stefalo, and Salmonsen for the substantial burden placed upon his sincerely held religious requirement to fast and feast for the entire Winter Nights period.

## 5. Establishment of Religion

233. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶39-43 as though set forth here in full; Plaintiff has a claim against Godfrey and Stefalo for the substantial burden placed upon his religious practice in denying an outdoor sacred space with a fire pit dedicated to the Gods for Odinist use.

234. Plaintiff realleges and incorporates by reference the facts enumerated in ¶52 as though set forth here in full; Plaintiff has a claim against Godfrey and Stefalo for the substantial burden placed upon his religious practice in denying Odinists the ability to hold Blót **on** the holy day that has solar significance

235. Plaintiff realleges and incorporates by reference the facts enumerated in ¶49 as though set forth here in full; Plaintiff has a claim against Godfrey, Cobban, and Stefalo for the substantial burden placed upon his religious practice in refusing to place Odinist materials on the tablets.

236. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Wigert for the substantial burden placed upon his religious practice in confiscating his religious drawing and never returning it to Plaintiff.

237. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶134/135 as though set forth here in full; Plaintiff has a claim against Jane/John Doe (perhaps Stefalo) for the substantial burden placed upon his religious practice in taking the set of wooden runes he had in his possession on January 29, 2019 and never returning them to him.

238. Plaintiff realleges and incorporates by reference the facts enumerated in ¶136 as though set forth here in full; Plaintiff has a claim against Coughlin for the substantial burden placed upon his religious practice in taking the set of runes Plaintiff had on June 7, 2019 and never returning them to him.

239. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for substantially burdening his religious practice through the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups.

240. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of his religious medallion on September 28, 2021, as this substantially burdens his religious practice.

241. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶50/51 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Stefalo, and Salmonsen for the substantial burden placed upon his

sincerely held religious requirement to fast and feast for the entire Winter Nights period.

## D. Fourth Amendment

242. Plaintiff realleges and incorporates by reference the facts enumerated in ¶147 as though set forth here in full; Plaintiff has separate and discrete claims against Olive and Marquez for excessive force in excessively spraying him with chemical agents without cause, reason, or justification.

243. Plaintiff realleges and incorporates by reference the facts enumerated in ¶129 as though set forth here in full; Plaintiff has a claim against John/Jane Does for the intentional defamation of him by telling a member of the public that Plaintiff is a "gang" leader of some sort though he is absolutely not.

## E. Fifth Amendment

244. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of his religious medallion and not giving Plaintiff just compensation.

245. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of the personal property in his cell on September 28, 2021 without just compensation.

246. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the intentional destruction of the personal property he

was wearing when he went to RHU on September 28, 2021 without just
compensation.

247. Plaintiff realleges and incorporates by reference the facts enumerated in
¶¶138-139 as though set forth here in full; Plaintiff has separate and discrete claims
against each Salmonsen, Foster, and Reich for not providing the promised just
compensation for the authorized deprivation of the property they claimed he could
not have when he returned from the FBOP.

**F. Eighth Amendment**

248. Plaintiff's legal claims under the Eighth Amendment to the U.S.
Constitution include the fact that Defendants Salmonsen, Guyer Wolken, and
Daugherty in particular were put on notice of a plethora of constitutional violations
through Plaintiff's grievances, but were deliberately indifferent to the repeated and
continuing injuries he suffered. Conversely, these same Defendants (as
policymakers) ratified their subordinates' adverse actions against Plaintiff
(Godfrey in particular) and their inaction in arresting the consistent violation of
Plaintiff's constitutional rights constitutes deliberate indifference, subjecting them
to liability.

249. Plaintiff's RHU conditions of confinement legal claims do not fall under the
Sandin atypical and significant standard, but the State statute specific to RHU; in
enacting MCA 53-30-700, et. seq. the State conferred liberty and property interests
upon all inmates in RHU which removed the prisons discretionary authority.
Sandin spotlighted the nature of conditions of confinement in segregation after
holding that the language of prison regulations allowed officials virtually
unfettered discretion in the operation of their facilities, however, once that
discretion is removed (as it is here with the plain and mandatory language of MCA

53-30-700, et. seq.) the <u>Sandin</u> standards become inapplicable, such as when punishment is arbitrary and capricious.

250. Plaintiff's legal claims include the fact that he asserts he has a constitutionally-conferred right to rehabilitation that is enforceable through the Eighth Amendment, in that punishment that is not clearly reformative in nature is *per se* cruel and unusual.

251. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶66-68 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen and Guyer for the conditions of confinement in RHU being clearly cruel and unusual during Plaintiff's 2019 segregation.

252. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶89-92 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, and Guyer for the conditions of confinement in RHU being clearly cruel and unusual during Plaintiff's 2020 segregation.

253. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶62, 89-92, 106-111 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Reich, and Guyer for their deliberate indifference to the plain and mandatory language of MCA 53-30-700, et. seq.

254. Plaintiff realleges and incorporates by reference the facts enumerated in ¶112 as though set forth here in full; Plaintiff has a claim Godfrey for excessive confinement on and after February 5, 2020 as this is cruel and unusual punishment.

255. Plaintiff realleges and incorporates by reference the facts enumerated in ¶112 as though set forth here in full; Plaintiff has a claim against Godfrey for excessive confinement as he personally told Plaintiff that he changed RHU custom to extend inmates stay in direct conflict with MCA 53-30-700, et. seq.

256. Plaintiff realleges and incorporates by reference the facts enumerated in ¶130 as though set forth here in full; Plaintiff has a claim against Godfrey for false imprisonment on and after September 28, 2021 as this is cruel and unusual punishment.

257. Plaintiff realleges and incorporates by reference the facts enumerated in ¶67 as though set forth here in full; Plaintiff has a claim against Guyer for the deliberate indifference to his serious medical need (seizures) by not having emergency call buttons in the RHU cells to attract medical attention.

258. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶103-105 as though set forth here in full; Plaintiff has separate and discrete claims against Winner for her deliberate indifference to his serious medical (gluten-free diet) and mental health needs.

259. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶89-92 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, and McNeil for depriving him of outside recreation or exercise as one of life's basic necessities.

260. Plaintiff realleges and incorporates by reference the facts enumerated in ¶144 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, McNeil, and Salmonsen for the lack of water or bathroom facilities for the entirety of the winter months every year, as this is one of life's basic necessities.

261. Plaintiff realleges and incorporates by reference the facts enumerated in ¶150 as though set forth here in full; Plaintiff has a claim against Trinity for their deliberate indifference to providing adequate nutrition to inmates at CCC in their desire to make a profit.

262. Plaintiff realleges and incorporates by reference the facts enumerated in ¶147 as though set forth here in full; Plaintiff has separate and discrete claims against Olive and Marquez for excessive force in excessively spraying him with chemical agents without cause, reason, or justification constituting cruel and unusual punishment.

263. Plaintiff realleges and incorporates by reference the facts enumerated in ¶115 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Winner, and Walls for Plaintiff being purposely placed in an unsanitary cell on February 7, 2020and not allowed to clean it, constituting cruel and unusual punishment.

## G. Fourteenth Amendment

264. Plaintiff's legal claims under the Fourteenth Amendment to the U.S. Constitution include those where supervisors were put on notice by his grievances and their refusal to arrest the violation of his rights subjects them to liability.


## 1. Equal Protection

265. All of Plaintiff's legal claims for deprivations of his Equal Protection are founded on discrimination of his race and religion, as well as his personal and religious beliefs.

266. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶39-43 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey and Stefalo for the substantial burden placed upon his religious practice by denying an outdoor sacred space with a fire pit dedicated to the Gods for Odinist use as others similarly situated have.

267. Plaintiff realleges and incorporates by reference the facts enumerated in ¶52 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey and Stefalo for the substantial burden placed upon his religious practice by denying Odinists the ability to hold Blót **on** the holy day that has solar significance as others similarly situated have.

268. Plaintiff realleges and incorporates by reference the facts enumerated in ¶49 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Cobban, and Stefalo for the substantial burden placed upon his religious practice by refusing to place Odinist materials on the tablets as others similarly situated have.

269. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶59/60 as though set forth here in full; Plaintiff has a claim against Wigert for the substantial burden placed upon his religious practice in confiscating his religious drawing and never returning it to Plaintiff as others similarly situated have.

270. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶134/135 as though set forth here in full; Plaintiff has a claim against Jane/John Doe (perhaps Stefalo) for the substantial burden placed upon his religious practice in taking the set of wooden runes he had in his possession on January 29, 2019 and never returning them to him as others similarly situated would get.

271. Plaintiff realleges and incorporates by reference the facts enumerated in ¶136 as though set forth here in full; Plaintiff has a claim against Coughlin for the substantial burden placed upon his religious practice in taking the set of runes Plaintiff had on June 7, 2019 and never returning them to him as others similarly situated would get.

272. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups as others are allowed to send or receive mail as others similarly situated would get.

273. Plaintiff realleges and incorporates by reference the facts enumerated in ¶132as though set forth here in full; Plaintiff has a claim against John/Jane Doe for the intentional destruction of his religious medallion, unlike others similar.

274. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶50/51 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Stefalo, and Salmonsen for the substantial burden placed upon his sincerely held religious requirement to fast and feast for the entire Winter Nights period as others similarly situated could practice their religion.

275. Plaintiff realleges and incorporates by reference the facts enumerated in ¶121as though set forth here in full; Plaintiff has a claim against Godfrey for ensuring he could not have a tablet, as others similarly situated could, for a month.

276. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶66-68 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen and Guyer for the conditions of confinement in RHU being clearly cruel and unusual during Plaintiff's 2019 segregation as others similarly situated are not treated this way.

277. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶89-92 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, and Guyer for the conditions of confinement in RHU

being clearly cruel and unusual during Plaintiff's 2020 segregation as others similarly situated are not treated this way.

## 2. Due Process

278. Plaintiff's legal claims under the Due Process Clause include the fact that he asserts he has a constitutionally-conferred right to rehabilitation that is enforceable through the substantive Due Process mandate of the Fourteenth Amendment; conversely, acts and omissions that are arbitrary and capricious or done as an exaggerated response to a perceived security need violate Due Process regardless of the reason or justification put forth.

279. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶33-153 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Guyer, and Salmonsen for effecting policies and procedures without Due Process by informing inmates or the public prior to their enactment, known in some jurisdictions as "sunshine laws."

280. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶33-153 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan for the blanket bans they have placed on certain mail, photos depicting women who "posed provocatively," used books, books from "books to prisoners" programs, pen-pals, and the sending or receiving of money to or from any source an inmate elects to without Due Process.

281. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶70-76, and 80 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan for denying his mail without notice, i.e. without Due Process.

282. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶70-76, and 80 as though set forth here in full; Plaintiff has one hundred separate and discrete claims against 15 Jane/John Does given the fact that there is no way to demonstrate how many letters or publications Plaintiff actually had denied, nor who may have done this, since MSP maintains that they do not have to provide notice, depriving Plaintiff of Due Process for denying mail without notice.

283. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶70-76, and 80 as though set forth here in full; Plaintiff has a claim against a Jane/John Doe for opening and photocopying a letter (an act that infers intent) from his friend Richard Callaway without providing either of them notice as to why it was denied or giving them an opportunity to appeal the denial.

284. Plaintiff realleges and incorporates by reference the facts enumerated in ¶79 as though set forth here in full; Plaintiff has separate and discrete claims against Klanecky, Milligan (two claims), and Reich for illegally denying photos for being "sexually explicit" without Due Process.

285. Plaintiff realleges and incorporates by reference the facts enumerated in ¶75 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Guyer, Reich, Daugherty, Cobban, Lochrie, Clark, and Milligan for denying his mail that had a stamp on the envelope without notice, arbitrarily removing some stamps and forwarding the mail to the inmate, or allowing other mail through with the stamp still on the envelope all without Due Process.

286. Plaintiff realleges and incorporates by reference the facts enumerated in ¶78 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich (two claims), Cobban, and Milligan (three claims) for

denying his mail from pen-pals and placing blanket bans on pen-pals without Due Process.

287. Plaintiff realleges and incorporates by reference the facts enumerated in ¶82 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen and Guyer for placing blanket bans on used books without Due Process.

288. Plaintiff realleges and incorporates by reference the facts enumerated in ¶77 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich, and Daugherty for placing blanket bans on greeting cards, postcards, etc. without Due Process.

289. Plaintiff realleges and incorporates by reference the facts enumerated in ¶77 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen, Guyer, Reich, and Daugherty for placing blanket bans on mail written in colored pen, pencil, marker, or crayon without Due Process.

290. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶81 and 83 as though set forth here in full; Plaintiff has separate and discrete claims against Salmonsen and Guyer for placing blanket bans on sending or receiving money to or from any person, organization, or business without Due Process.

291. Plaintiff realleges and incorporates by reference the facts enumerated in ¶85 as though set forth here in full; Plaintiff has a claim against Foster for denying "March of Titans" and returning it to the sender, at his expense, without affording Plaintiff any Due Process.

292. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶93/94 as though set forth here in full; Plaintiff has separate and discrete claims

against Renfroe (eight claims) and Walls (nine claims) for the disappearance of privileged letters that were sent by Plaintiff to people and groups to expose the oppressive, cruel and unusual punishment in RHU, without Due Process.

293. Plaintiff realleges and incorporates by reference the facts enumerated in ¶95 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the disappearance of fourteen letters that were sent by Plaintiff to Odinists/groups or sent to him by Odinists/groups without Due Process.

294. Plaintiff realleges and incorporates by reference the facts enumerated in ¶98 as though set forth here in full; Plaintiff has separate and discrete claims against John/Jane Does for the disappearance of at least two letters containing photos at the CCC that were sent to Plaintiff and personal property all without Due Process.

295. Plaintiff realleges and incorporates by reference the facts enumerated in ¶34-153 as though set forth here in full; Plaintiff has separate and discrete claims against Reich, Swanson, Klanecky, and Lochrie for their repeated refusal to process grievances in contradistinction to Due Process.

296. Plaintiff realleges and incorporates by reference the facts enumerated in ¶121 as though set forth here in full; Plaintiff has a claim against Godfrey for ensuring he could not have a tablet for a month without Due Process.

297. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶62, 89-92, 106-111 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, Reich, and Guyer for their deliberate indifference to the plain and mandatory language of MCA 53-30-700, et. seq. without Due Process.

298. Plaintiff realleges and incorporates by reference the facts enumerated in ¶112 as though set forth here in full; Plaintiff has a claim against Godfrey for excessive confinement on and after February 5, 2020 without Due Process.

299. Plaintiff realleges and incorporates by reference the facts enumerated in ¶130 as though set forth here in full; Plaintiff has a claim against Godfrey for false imprisonment on and after September 28, 2021 without Due Process.

300. Plaintiff realleges and incorporates by reference the facts enumerated in ¶67 as though set forth here in full; Plaintiff has a claim against Guyer for the deliberate indifference to his serious medical need (seizures) by not having emergency call buttons in the RHU cells to attract medical attention.

301. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶103-105 as though set forth here in full; Plaintiff has separate and discrete claims against Winner for her deliberate indifference to his serious medical (gluten-free diet) and mental health needs without Due Process.

302. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶89-92 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Salmonsen, and McNeil for depriving him of outside recreation or exercise as one of life's basic necessities without Due Process.

303. Plaintiff realleges and incorporates by reference the facts enumerated in ¶144 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, McNeil, and Salmonsen for the lack of water or bathroom facilities for the entirety of the winter months every year without Due Process, as this is one of life's basic necessities.

304. Plaintiff realleges and incorporates by reference the facts enumerated in ¶116as though set forth here in full; Plaintiff has two claims against Godfrey for

throwing away his appeals on February 12, 2019 as this was done without Due Process.

305. Plaintiff realleges and incorporates by reference the facts enumerated in ¶112 as though set forth here in full; Plaintiff has a claim against Godfrey for excessive confinement as he personally told Plaintiff that he changed RHU custom to extend inmates stay in direct conflict with MCA 53-30-700, et. seq. and this was done without Due Process.

306. Plaintiff realleges and incorporates by reference the facts enumerated in ¶124 as though set forth here in full; Plaintiff has a claim against Godfrey for excessive confinement from the email he sent Lemmon on May 4, 2020 which arbitrarily and capriciously kept him for at least another thirty (30) days beyond the scheduled time for his release from RHU and this was intentionally done without Due Process because of Plaintiff's peaceful protest.

307. Plaintiff realleges and incorporates by reference the facts enumerated in ¶142 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey and Wigert for denying him a job in the gym without Due Process.

308. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶53-55 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey and McTighe for the false conviction of assault at the CCC and the false imprisonment for the year that followed without Due Process.

309. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶87/88 as though set forth here in full; Plaintiff has separate and discrete claims against Godfrey, Wigert, and Short for designating him as STG without Due Process.

310. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶87/88 as though set forth here in full; Plaintiff has a claim against Cobban for depriving him of all Due Process when she asserted that there is no way to appeal an STG designation or have it removed.

311. Plaintiff realleges and incorporates by reference the facts enumerated in ¶¶58 and 112as though set forth here in full; Plaintiff has two claims against Godfrey for false imprisonment after the February 3,2020 and January 8, 2019 false convictions without Due Process.

312. Plaintiff realleges and incorporates by reference the facts enumerated in ¶149 as though set forth here in full; Plaintiff has a claim against Klanecky for false conviction on July 16,2019 that led to extended/excessive confinement without Due Process.

313. Plaintiff realleges and incorporates by reference the facts enumerated in ¶148 as though set forth here in full; Plaintiff has separate and discrete claims against Klanecky and Cobban for responding to both an informal and grievance on the same issue, which deprived him of Due Process.

## VIII. PRAYER for RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

314. Declaratory judgement that the acts and omissions described in ¶¶34-153 violated Plaintiff's Constitutional rights.

315. A preliminary and permanent injunction ordering that…

    a. All Defendants cease their discrimination and harassment of Plaintiff and that he never be retaliated on again.
    b. That Plaintiff not be transferred to another State/prison system as retaliation for this lawsuit.

c. Both the STG and Assaultive designations be removed from Plaintiff's file.

d. That the two "assault" and STG/unauthorized gathering disciplinaries be permanently expunged from Plaintiff's file.

e. That mail policies, practices, and customs be changed to allow greeting cards, any kind of stamp on the envelope (or that MSP simply remove any offending stamp, rather than deny the letter), letters written in any kind of colored pen, pencil, crayon, or marker; pen-pals and pen-pal programs; books from anyone and used books; inmates to send or receive money to or from any source; and that inmates always receive notice of ANY denied mail or publication.

f. That prior to any change in policy or procedure notice be given to both inmates and the public for comment.

g. That MSP return to allowing 25 pictures at a time, without an inmates' name and number on them, and that only photos that clearly show vagina, anus, or nipples be denied as "sexually explicit."

h. That Odinists be given their own sacred space outside with a fire pit to hold rituals around, be allowed to observe their holy days **on** the day of their solar significance, and have the Poetic Edda and Prose Edda placed on the tablet.

i. That MSP allow inmates on the High Side access to the gym daily, as well as the outside recreation yard, ensure that there is running water outside year round, and change policy and procedure to guarantee these.

j. That inmates be provided clean clothes and bedding on a regularly scheduled basis, access to cleaning supplies on a daily basis, ensure that heating/ventilation in the cells is adequate and working at all times and change policy and procedure to guarantee these.

k. That MSP install emergency call buttons in every cell in RHU and SAU.

l. That MSP offer accredited educational and vocational opportunities to all inmates, wherever they may be housed, as part of their right to rehabilitation.

m. That MSP develop, implement, and uphold policy and procedure which provides proper Due Process for disciplinary, the placement of inmates in RHU and segregation, property, classification, and STG designation.

n. That MSP develop, implement, and uphold policy and procedure which is in accord with MCA 53-30-700, et. seq., to include, but not be limited to, shortening the duration of time inmates may be housed in RHU/segregation, only placing them in RHU for the "most serious and threatening behavior", allowing them to purchase canteen (food, drinks, hygiene, etc.) on the same basis as general population, and once more allowing them to have their television after twenty (20) days of clear conduct.

o. That MSP cease denying books which do not obviously violate clearly established law or advocate violence.

p. That MSP return all of Plaintiff's personal property which was confiscated each time he was placed in RHU and upon his return from the FBOP, including, but not limited to, both sets of wooden runes, his MP3 player (in a manner in which he can use it), and the religious drawing taken by Wigert; if these cannot be returned because Defendants illegally disposed of them, then Plaintiff should receive just compensation, in the amount of $5,000.00.

q. That MSP appoint an independent ombudsman to investigate and resolve future complaints of deprivation of Due Process in particular, but the confiscation and disposal of property, the denial of books, mail, and pictures, as well as any other issues which may require oversight and accountability.

r. That a Special Master be appointed to ensure that all changes are made according to this Court's orders.

316. Nominal damages in the amount of $100.00 against every Defendant for each claim they are held liable for.

317. Compensatory damages against each Defendant, jointly and severally, in the amount of $100,000.00.

318. Compensatory damages in the amount of $904.00 for the cost of Plaintiff's MP3 player and the 407 songs on it and another $124.57 for the theft of money from his inmate account for "postage" and "fees" that he did not authorize.

319. Punitive damages against each Defendant, jointly and severally, in the amount of $100,000.00.

320. Plaintiff's costs incurred during the course of this lawsuit.

321. A jury trial on all issues triable by a jury.

322. Any additional relief that this Court deems just, proper, and equitable.

DATED this 12th day of February, 2023.

Danny Lee Warner Jr.
#799-415
P.O. Box 56
Lebanon, OH 45036

## VERIFICATION

I certify under penalty of perjury that I have read the foregoing Amended Complaint carefully and hereby verify that the facts alleged therein are true and correct to the best of my knowledge and belief.

DATED this 12th day of February, 2023.

Danny Lee Warner Jr.